# THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Case No. 24-1364

C.S. by her Next Friend, ADAM STROUB,
Plaintiff-Appellant
v.
Craig McCrumb, et al.
Defendants-Appellees

Appeal from the United States District Court
For the Eastern District of Michigan
The Hon. Terrence G. Berg, District Judge
Case No. 4:22-CV-10993-TGB-EAS

## <u>DEFENDANTS' -APPELLEE'S BRIEF ON APPEAL</u>

### ORAL ARGUMENT REQUESTED

**PREPARED BY:**
DANIEL J. LoBELLO (P81069)
Attorney for Defendant
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
989-790-0960
<u>dlobello@owdpc.com</u>

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee, Craig McCrumb, is not a corporate entity and, as such, has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

Defendant-Appellee, Michael Papanek, is not a corporate entity and, as such, has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

Defendant-Appellee, Amy Leffel, is not a corporate entity and, as such, has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

# TABLE OF CONTENTS

                                                                    **Page**

Corporate Disclosure Statement ................................................................ii

Table of Contents ..................................................................................iii

Table of Citations ...................................................................................v

Statement In Support of Oral Argument ..................................................viii

Statement of the Issues ...........................................................................1

Statement of the Case ............................................................................2

    C.S. ...............................................................................................2

    Student Handbook/Dress Code ..........................................................2

    February 17, 2022 ...........................................................................3

Summary of the Argument ......................................................................7

Argument ..............................................................................................9

    I.     The District Court Properly Applied the Tinker Standard to Justify the Schoo's Restriction. ..........................................................9

        A. Reasonable Forecast of Disruption Given Context and Circumstances ...................................................................9

        B. Emotional and Psychological Impact on Students Justified Restriction ........................................................................13

    II.    The School's Actions Were Justified by Significant Pedagogical Concerns ...................................................................................15

    III.   The Declaration is Immaterial ..........................................................17

IV. Qualified Immunity Properly Protected School Officials From Liability ……………………………………………………20

V. The District Court Has Inherent Authority to Manage Its Docket ….21

Conclusion ……………………………………………………25

Certificate Of Service ……………………………………………26

Certificate Of Compliance ………………………………………27

Addendum – Designation of District Court Documents …………………28

# TABLE OF CITATIONS

**Cases**                                                                                    **Pages**

*Alabama Student Party v. Student Government Association,*
    867 F.2d 1344 (11th Cir. 1989) …………………………………………16

*A.M. ex rel. McAllum v. Cash,*
    585 F.3d 214 (5th Cir. 2009) …………………………………………10

*Biechele v. Cedar Point, Inc.*
    747 F2d 209 (6th Cir. 1984) …………………………………………19

*Boucher v. School Board of School District of Greenfield,*
    134 F. 3d 821 (7th Cir. 1998) …………………………………………14

*Briggs v. Potter,*
    463 F.3d 507 (6th Cir. 2006) …………………………………………19

*Curry v. Hensiner*
    513 F.3d 570, (6th Cir. 2008) …………………………………………..21

*Fleischhauer v. Fletner,*
    3 F.3d 148 (6th Cir. 1993) …………………………………………23

*Hardwick ex rel. Hardwick v. Heyward,*
    711 F.3d 426 (4th Cir. 2013) …………………………………………10

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)   …………………………………………..21

*Hazelwood School District v. Kuhlmeier,*
    484 U.S. 260 (1988) …………………………………………15, 16, 17

*LaVine v. Blane School District,*
    257 F.3d 981 (9th Cir. 2001) …………………………………………14

*L.M. v. Town of Middleborough, Massachusetts,*
    103 F. 4th 854 (1st Cir. 2024) …………………………………………13

*Mahanoy Area Sch. Dist. v. B.L.,*
    141 S.Ct. 2038 (2021) …………………………………………………………17

*Newsom v. Albemarle Cty. Sch. Bd.,*
    354 F. 3rd 249 (4th Cir. 2003) ……………………………………9, 14, 15

*N.J. v. Sonnebend,*
    37 F.4th 412 (4th Cir. 2022) …………………………………………12, 17

*Nuxoll ex rel. Nuxoll v. Indian Prairie School District,*
    #204, 523 F.3d 668 (7th Cir. 2008) ……………………………………14, 17

*Phillips v. Anderson County School District Five,*
    987 F. Supp. 488 (D.S.C. 1997) …………………………………………..10

*Powell-Pickett v. A.K. Steel Corp.,*
    549 F. App'x 347 (6th Cir. 2013) …………………………………………19

*Reich v. City of Elizabethtown, Kentucky,*
    945 F.3d 968 (6th Cir. 2019) ……………………………………………19

*Settle v. Dickson County School Bd.*, 53 F.3d 152 (1995) ……………………16, 17

*Tinker v. Des Moines Independent Community School District,*
    393 U.S. 503, 89 S. CT. 733, 21 L.Ed.2d 731(1969)
    …………………………………………………..9, 10, 11, 12, 14, 15, 16, 17

*United States v. Locke,*
    471 U.S. 84 (1985) …………………………………………………………..23

*Violette v. P.A. Days, Inc.,*
    427 F.3d 1015 (6th Cir. 2005) ……………………………………………22, 23

*Walker-Serrano ex rel. Walker v. Leonard, supra,*
    325 F.3d 412 (3d Cir. 2003) …………………………………………14

## **Rules**

Fed.R.Civ.Proc. 5.1.1(c) …………………………………………………………24

Fed.R.Civ.Proc. 6  ……………………………………………………..24

Fed.R.Civ.Proc. 6(a)  ……………………………………………………..22

Fed.R.Civ.Proc. 6(a)(3)  ……………………………………………………22, 24

Fed.R.Civ.Proc. 6(b)(1)(A) ……………………………………………………21

FRAP 26.1(a) ……………………………………………………………ii

FRAP 34(a) ……………………………………………………………vi

Sixth Circuit Rule 34(a)  ……………………………………………………vi

**<u>Constitutional Provisions</u>**

First Amendment  ……………………………………………………passim

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Defendants – Appellees respectfully request that this matter be submitted for oral argument before this Honorable Court pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a).  Oral argument in this case will serve as a productive tool in helping to clarify the constitutional issues before the Court. The issues presented here arise out of Plaintiff – Appellant's request for injunctive and declaratory relief alleging that her First Amendment rights were violated. The Plaintiff further challenges that her First Amendment rights were clearly established such that Defendants-Appellees were  not entitled to Qualified Immunity.  The District Court found that there was no constitutional violation and that the Defendants-Appellees were entitled to Qualified Immunity.  Oral argument will further serve to reinforce that position.

## STATEMENT OF THE ISSUES

I.   Where the District Court determined that the Plaintiff failed to present evidence opposing the school's specific and significant justifications for restricting speech, was summary judgment properly granted in favor of the school?

II.   Does the District Court's finding that the Plaintiff failed to set forth sufficient evidence to oppose summary judgment, is the Plaintiff's Declaration material to the issues on Appeal?

III.   In the absence of any constitutional violation, did the District Court properly find Qualified Immunity for the School Officials?

IV.   Where the Plaintiff does not present any evidence of prejudice or an abuse of discretion by the District Court, did the District Court properly exercise its inherent discretion to modify its briefing schedule.

## STATEMENT OF THE CASE

**C.S.**

By way of background, C.S. was a third (3rd) grade student at Robert Kerr Elementary School at the time of this incident. C.S. has an Individualized Education Plan due to a diagnosis of Autism. *See Deposition of Adam Stroub,* RE 17-3, Page ID # 323. Prior to and at the time of this incident, C.S. did not have a history of disciplinary issues at school, she is otherwise a straight "A" student, and there have not been any negative reports about C.S. to her parents from the school prior to or following this incident. *See* RE 17-3, Page ID# 325. C.S.'s parents are Adam Stroub and Jessica Linfield. *See* RE 17-3, Page ID # 323.

**Student Handbook / Dress Code**

Before the start of each school year, the School reviews its Handbook for each building i.e. elementary, middle, and high school. *See Deposition of Amy Leffel,* RE 17-4, Page ID # 342. Typically, the review is done by the building-level principal and submitted to the Board of Education for Approval. *See* RE 17-4, Page ID # 342. However, leading up to the 2021/2022 school year, Ms. Leffel had just been hired as the Robert Kerr Elementary School Principal, and she believed that the handbook for that year was already in place when she accepted her new position. *See* RE 17-4, Page ID # 342. Within the handbook for 2021/2022, the School has a dress code to keep students safe and to prevent distractions from the learning environment. See

2

*Handbook, RE 17-5 , Page ID # 364.*  In the Handbook, students are not permitted to wear hats except for outdoor recess.  In addition, student clothing "must not be offensive in any way and the building principal/staff has the right to decide what is offensive, but some examples are: words/slogans that advertise illegal substances, words/slogans that are racially or religiously offensive, violence themes, vulgar or sexual innuendo, etc." *See* RE 17-5, Page ID # 364.

Leading up to the events that give rise to this Complaint, Mr. Stroub and Ms. Linfield never attended any board meetings to challenge the dress code policy in place in 2021/2022. *See* RE 17-3, Page ID # 324.  Mr. Stroub has never read the handbook or the dress code policy, but Ms. Linfield states that she had reviewed it. *See Deposition of Jessica Linfield,* RE 17-6, Page ID # 386.

**February 17, 2022**

The incident giving rise to the present Complaint occurred on February 17, 2022. *See Complaint,* RE 17-7 Page ID # 393-403*; Answer,* RE 17-8, Page ID# 404-417. At that time, the School conducted a week-long event for students called the Great Kindness Challenge. *See RK Newsletter,* RE 17-9, Page ID# 418-421. During the week, the school sponsored different activities where students were encouraged to dress-up on and complete a Great Kindness check list which they could exchange for a small prize:

The Great Kindness Challenge

The Great Kindness Challenge is one week dedicated to being extra kind to those around you. Taking extra thought in your actions and thinking about the difference a culture of kindness and compassion in our school can make! Our school will participate this week by having several Kindness dress-up days that students may participate in along with completing a Great Kindness Challenge checklist!

All students will receive The Great Kindness Challenge checklist and will be encouraged to complete as many acts of kindness as possible. Checklists will be kept here at school in your child's classroom. When your child completes the checklist, they may return it to their teacher by February 18th for a small prize. Students' names may also be called on the announcements for a job well done in bringing extra kindness to our school!

*See* RE 17-9, Page ID# 419.

The day in question was "Dress Up-Wear a Hat Day" in which students could wear a hat of their choosing throughout the day. *See* RE 17-9, Page ID# 418. Normally, students are only allowed to wear hats during recess time and hat day was a special occasion. *See* RE 17-6, Page ID# 385. C.S.'s mother stated that there was a pile of hats at their home, and C.S. picked what she wanted to wear. *See RE 17-6, Page ID# 385.* When asked why C.S. picked the Hat, Ms. Linfield believed it was because C.S. had given the Hat to her father, Adam Stroub, as a birthday present. *See RE 17-6, Page ID# 385.* C.S. said that she picked the hat because it made her feel safe, and because it was her dad's hat. *See Deposition of C.S., RE 17-10, Page ID# 424.* When she arrived at school, C.S. went to her locker which is located close to Mr. Papanek's office.[1] *See Deposition of Michael Papanek, RE 17-11, Page*

---

[1] Mr. Papanek is the On Track Coach at Robert Kerr Elementary, and C.S. would often stop by his office in the morning with other students to say "hi." *See* RE 17-11, Page ID# 430-431.

*ID# 429-430.* C.S. peaked into Mr. Papanek's office to say "hi," and Mr. Papanek noticed C.S.'s hat with a gun on it. *See* RE 17-11, Page ID# 430. After C.S. went to class, Mr. Papanek went to Principal Amy Leffel's office to inform her about the hat, and discuss what, if anything, should be done. *See* RE 17-11, Page ID# 430-431. Mr. Papanek described the hat which Ms. Leffel understood to have a picture of a gun. *See* RE 17-4, Page ID# 341. Ms. Leffel believed that the depiction of a weapon with the phrase, "COME AND TAKE IT" was provocative, threatening and may incite an altercation or disruption to the educational environment. *See* RE 17-4, Page ID # 342. She also believed that the depictions on the Hat were against the School dress code which prohibited the display of violent themes. *See* RE 17-4, Page ID # 342.

In the background of this incident, Durand Area Schools had absorbed several students from Oxford Area School District who moved to the area following the school shooting that occurred on November 30, 2021. *See* RE 17-4, Page ID # 344. These students were receiving counseling, social work, and other supports through the school. *See* RE 17-4, Page ID # 342-343. With this in mind, Ms. Leffel also believed that the Hat might cause fear and disruption among the students against their rights to a free and appropriate public education. *See RE 17-4, Page ID # 344.* Ms. Leffel and Mr. Papanek discussed what should be done, and the consensus was

for Mr. Papanek to call home and see if another hat could be brought by C.S.'s parents. *See* RE 17-4, Page ID # 340*; see also* RE 17-11, Page ID # 431.

When Mr. Papanek reached C.S.'s parents, he first spoke with Ms. Linfield who handed the phone to Mr. Stroub. *RE* 17-11, Page ID # 430. Mr. Papanek explained that the Hat was inappropriate for school and asked if he could bring another hat for C.S. to wear. RE 17-11, Page ID # 431. Mr. Stroub declined and said, "no one better lay a hand on her hat." RE 17-11, Page ID # 431. From there, Mr. Papanek and Ms. Leffel went to C.S.'s classroom, called her into the hallway, asked her to put her the Hat in her locker which she did without incident. She then returned to class. *RE 17-4, Page ID # 341.* After, Ms. Leffel called Mr. Stroub to discuss the matter leaving a voicemail message. *See Emails, February 17, 2022,* RE 17-12, Page ID # 436.

After school, C.S. returned home, and Mr. Stroub sent an email to Ms. Leffel confirming that C.S. was told to put the hat in her locker. *See* RE 17-12, Page ID # 436. Ms. Leffel responded by stating that the hat depicted a weapon which was inappropriate for students to wear in a school setting and ran afoul of the student handbook. *See* RE 17-12, Page ID # 436. Thereafter, Mr. Stroub and/or Ms. Linfield did not communicate further with the school regarding the incident. *See* RE 17-3, Page ID # 326. Likewise, C.S.'s parents did not attend any board meetings to

challenge the dress code. *See* RE 17-3, Page ID # 326, 330. More importantly, C.S. did not receive any discipline because of the incident. *See* RE 17-3, Page ID # 326.

## SUMMARY OF THE ARGUMENT

This Honorable Court should affirm the District Court's well-reasoned decision in favor of the Defendants-Appellees because the school officials acted lawfully under established First Amendment jurisprudence. Even with the novel circumstances presented by this case, the school's reasonable restriction of C.S.'s hat, which depicted an AR-15 rifle and the slogan "COME AND TAKE IT," was justified by the specific and significant forecast of disruption.

Contrary to the Appellant's position, the First Amendment does not protect a student's rights to express themselves however, whenever, and about whatever they wish. On that point, the District Court gave deference to school administrators' legitimate concerns that the hat's firearm imagery could cause emotional distress and interfere with the school's educational environment—especially those students who had transferred from the Oxford School District after a recent tragic school shooting. On a more fundamental level, the District Court properly considered the hat's provocative invitation to "COME AND TAKE IT" would cause fighting or disruption to ensue from younger students.

Taken together, the District Court correctly acknowledged a school's broad authority to regulate speech during school-sponsored events to promote educational

goals.  The "Wear a Hat Day" event was part of the "Great Kindness Challenge,"
designed to foster kindness and empathy. Although the District Court determined
that the circumstances of this case are not entirely answered under *Hazelwood*, the
school official's legitimate pedagogical concerns are still valid under *Tinker*.

Notwithstanding the foregoing, the age of the students further justified the
school's actions.  Elementary school children are more impressionable and
emotionally vulnerable than older students, making it necessary for school officials
to be particularly cautious when addressing potentially disturbing speech. Courts
have consistently held that age is a critical factor in school speech cases, and younger
students require greater protection from disruptive or harmful messages.  The school
officials acted appropriately in limiting speech that could impact the well-being of
such young children.

In addition, the District Court correctly granted Qualified Immunity to the
school officials.  No clearly established law guarantees elementary students the right
to wear clothing depicting firearms and provocative slogans as symbolic speech.
The legal landscape does not support the claim that restricting such imagery in this
context violated the Constitution.

Finally, the Appellants argument as to the timing of filing the Appellees
Motion and Brief ignores the District Court's inherent authority to alter the briefing
schedule.  After all,  the Appellants were  given latitude to file a corrected brief

before this Honorable Court. The District Court did not abuse its discretion. Substance over form should prevail, contrary to the Appellant's position.

## ARGUMENT

**I.    The District Court Properly Applied the *Tinker* Standard to Justify the School's Restriction.**

**A.    Reasonable Forecast of Disruption Given Context and Circumstances**

Under *Tinker*[2], the Plaintiff agrees that school officials can restrict student expression if they reasonably forecast that it will "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker*, 393 U.S. at 509. However, the Plaintiff essentially argues that the school officials in this case "*did not present facts that reasonably led school authorities to forecast substantial disruption of or material interference with school activities or the invasion of the rights of others.*" *See e.g. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F. 3rd 249 (4th Cir. 2003). (emphasis added)

Contrary to the Plaintiff's assertions, the District Court found the exact opposite to be true:

> "...school administrators presented **undisputed** evidence supporting their professional judgment that allowing students to wear clothing featuring images of firearms—especially assault style rifles—carries substantial risk of disruption, and that C.S.'s hat with its "COME AND TAKE IT" slogan in particular caused risk of scuffles... " This is

---

[2] *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)

especially so because **C.S.'s father has presented no evidence** that would call this judgment into question.

RE 25, Page ID # 623(emphasis added).

"*Tinker* does not require that displays of the [challenged speech] to *in fact* cause substantial disruption or interference, but rather that school officials reasonably *forecasted* that such displays could cause substantial disruption or materially interfere with the learning environment." citing *Tinker,* 393 U.S. at 514, 89 S.Ct. 733)); *A.M. ex rel. McAllum v. Cash, 585 F.3d 214,224 (5th Cir.2009)* (observing that cases such as *Melton* and *Phillips v. Anderson County School District Five,* 987 F.Supp. 488 (D.S.C.1997), ""do not stand for the proposition that schools may not prohibit the [speech] unless it has actually caused past disruptions" but instead "reflect the principle that administrators will usually meet their burden under *Tinker* by showing that the proscribed speech has in fact been disruptive in the past."" *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 439 (4th Cir. 2013).

Comparatively, a school's restriction of speech will not be upheld where there was "no evidence whatever of petitioners' interference, actual or nascent, with the schools' work or of collision with the rights of other students to be secure and to be left alone." *Tinker,* 393 U.S at 508. Again, a school does not need to present evidence that the disruption actually occurred or that the forecasted disruption be cataclysmic, as the Plaintiff suggests, and it is enough that a school reasonably

believes that the speech would materially disrupt classwork. In this case, Principal Amy Leffel and other school officials reasonably believed that C.S.'s hat, depicting an AR-15 rifle, could cause disruption and emotional distress, particularly in light of the unique circumstances affecting the student body. In her deposition, Principal Leffel explained the potential for disruption. She testified, "We had students at our school who had recently transferred from Oxford, and they were undergoing counseling because of the school shooting there. Displaying a gun, even symbolically, could cause anxiety and fear among these students." *See* RE 17-4, Page ID # 345. The recent Oxford Michigan High School shooting, where several students were killed and injured, was a well-known event that had a direct emotional impact on the school's student body. This context provided school officials with a reasonable basis to believe that allowing the hat could lead to substantial disruption, especially for those students receiving counseling for trauma.

Again, *Tinker* does not require schools to wait for actual disruption. Instead, it permits preventive action when officials reasonably forecast disruption. *Tinker*, 393 U.S. at 513. In this case, Leffel's concerns were well-founded and not merely speculative, given the emotionally charged atmosphere in the school following the Oxford shooting.

To that end, the District Court properly recognized that "the application of *Tinker* must account for such factors as the age and grade level of the students to

whom the speech is directed and any factors particular to the educational environment or history of the school or student body in question. Temporal factors and recent events might be relevant. And the inquiry accounts for the professional knowledge and experience of school administrators in setting and enforcing disciplinary standards. *Tinker*, 393 U.S. at 507, 89 S.Ct. 733 ("The Court has repeatedly emphasized the need for affirming the comprehensive authority ... of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."). *See* RE 25, Page ID# 616 (citing *N.J. v. Sonnebend*, 37 F.4th 412, 426 (4th Cir. 2022)).

Certainly, it is acknowledged that the District Court's analysis of this case might have been different if the Oxford tragedy had not occurred, if it had not occurred less than an hour's drive from Durand Area Schools, or if students from Oxford had not transferred into the District. The outcome might have also changed if C.S. was in high school as opposed to third grade. On that point, the Court's reasoning is instructive:

> "It may very well be that, in school settings with older students, the rules will allow her greater latitude to express her opinions through clothing. But here, Robert Kerr Elementary school officials made a policy decision to prohibit the wearing of a hat with an AR-15 and the phrase "Come and Take It" based on the written requirements of the student handbook and out of concern that the violence associated with an assault rifle and the aggressive nature of the slogan would be disruptive to the teaching atmosphere. The decision was justified by

undisputed evidence in the record and therefore does not violate the
First Amendment."

RE 25, Page ID# 630.

The Plaintiff categorizes Leffel's concerns as a mere generalized discomfort
or remote apprehension of disturbance. However, as the District Court recognized,
the Plaintiff failed to present any evidence to demonstrate that the impact of the
recent and proximate effect of the Oxford shootings coupled with the impetuous
nature of elementary schools students dared by the hat's provocative invitation to
"COME AND TAKE IT." Likewise, the Plaintiff did not provide evidence that the
school official's concerns were not reasonably forecasted as specific or significant
disruptions.

**B.    Emotional and Psychological Impact on Students Justified Restriction**

Courts have increasingly recognized that schools may limit speech based on
potential emotional or psychological harm to students, especially younger and more
impressionable children. See e.g. *L.M. v. Town of Middleborough, Massachusetts*,
103 F.4th 854 (1st Cir. 2024)( finding that the message in this school context would
so negatively affect the psychology of young students with the demeaned gender
identities that it would "poison the educational atmosphere" and so result in declines
in those students' academic performance and increases in their absences from
school). It is enough for the school to present "facts which might reasonably lead

school officials to forecast substantial disruption." *Boucher v. School Board of School District of Greenfield,* 134 F.3d 821, 827–28 (7th Cir.1998); *Walker–Serrano ex rel. Walker v. Leonard, supra,* 325 F.3d at 416; *LaVine v. Blaine School District,* 257 F.3d 981, 989 (9th Cir.2001).

As recognized in *Tinker,* a school's restriction of speech is justified where it would "invade the rights of others." *Tinker,* 393 U.S. at 513; *see also Newsom,* 354 F. 3rd at 256.  In *Nuxoll ex rel. Nuxoll v. Indian Prairie School District # 204,* 523 F.3d 668 (7th Cir. 2008), the court acknowledged that "emotional disruption" can be a legitimate factor when evaluating potential school disruption.  Similarly, in *Walker-Serrano,* the Third Circuit  recognized that elementary school students are particularly vulnerable to emotional disturbance caused by speech involving sensitive topics such as violence. *See e.g.* 325 F.3d 412,414,416-417 (3rd Cir. 2003)( basis of the student's position to change the field trip was due to the circus' cruelty to animals).

As indicated above, Leffel testified that her concern was not limited to physical disruption but also extended to the emotional well-being of her students, stating,  "It's not just about kids acting out in class; it's about creating a safe space where kids, particularly those dealing with trauma, don't feel anxious or threatened by what they see" See *RE 17-4, Page ID# 344.*  The fact that multiple students were dealing with the aftermath of school shootings less than an hour from their own

14

school further justifies the school's decision to prevent the hat from being worn. See RE 17-4, Page ID# 344.  Although the Plaintiff disagrees, C.S. *and her classmates* have a right to a free and appropriate public education.

Again, this concern was not a generalized fear of disruption, but a specific, reasonable expectation based on the known emotional state of certain students in the school.  Comparatively, Court's like those in *Newsom ex rel. Newsom v. Albemarle County School Board*, 354 F.3d 249 (4th Cir. 2003), found no evidence of disruption in cases involving NRA t-shirts, but the factual context is distinguishable in this case. Here, the emotional harm to students, particularly those affected by the Oxford shooting, provided sufficient grounds for the restriction under *Tinker*.

## II.    The School's Actions were justified by Significant Pedagogical Concerns

Although the District Court did not wholly agree that *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), applied to render the hat as bearing the "school-sponsored speech," the Court recognized that the protections of *Tinker*, "must be applied in light of the special characteristics of the school environment." *See* RE 25, Page ID# 624.  In other words, the Court did not ignore, nor was it required to ignore, that the "Wear a Hat Day" event was part of the larger "Great Kindness Challenge," a school-sponsored activity aimed at promoting kindness, empathy, and non-violence among students.  School officials were entitled to regulate speech during this event to ensure that the pedagogical message of teaching

kindness was not overshadowed by imagery that could provoke anxiety or fear, such as the depiction of an AR-15 rifle.

In *Settle v. Dickson County School Bd., 53 F.3d 152, 155 (1995)* this Court reasoned that *Tinker* supports the conclusion that teachers have broad discretion in limiting speech when they are engaged in administering the curriculum. In *Tinker,* the Court held that a student could wear a black armband to protest the Vietnam War. But, the [Supreme] Court found central to its holding that wearing the armband would not "substantially interfere with the work of the school or impinge on the rights of other students." 393 U.S. at 509. The Court specifically stated that a school could limit otherwise protected speech if it did so as part of a "prescribed classroom exercise." *Settle, 53 F.3d at 156* (citing *Tinker*). Writing separately and, perhaps, best explaining the District Court's reasoning on this issue, Judge Batchelder stated:

> If there were a First Amendment issue here, it would fall somewhere in between *Hazelwood* and *Tinker* as a form of student expression *allowed* under the school curriculum but *not* sponsored or endorsed by the school. Certainly not all student speech in the classroom bears the imprimatur of the school. This seems as obvious as the opposite proposition; students do not have an unlimited or unbridled right to speak out freely while on school property. The Supreme Court has acknowledged that a difference exists "between speech a school must *tolerate* and speech a school must affirmatively promote." *Alabama Student Party v. Student Government Association,* 867 F.2d 1344, 1347 (11th Cir.1989) (emphasis added) (citing *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988)).

*Settle*, 53 F.3d at 158.(Batchelder, J, Concurring).

16

Analogous to *Settle*, the District Court's consideration of the school's legitimate pedagogical concerns in this case demonstrates a potential legal gap in circumstances where *Tinker* or *Hazelwood* may not answer this First Amendment question entirely. The Plaintiff argues that the Seventh Circuit's explanation of this distinction should apply.[3] However, this Court is not bound by the Seventh Circuit's decision. Should this Honorable Court agree with Judge Batchelder, then the District Court properly considered that schools may restrict speech where the same is part of the curriculum. Alternatively, Leffel articulated clear "pedagogical" reasons for asking C.S. to remove the hat, stating, "The Great Kindness Challenge was about fostering kindness and creating a positive, safe school environment. A gun, even on a hat, sends the opposite message, especially to younger students who may be scared or confused by that imagery." *See* RE 17-4, Page ID# 344-345.

### III.    The Declaration is Immaterial

As Plaintiff acknowledges, the District Court did not explicitly state whether it considered the Plaintiff's declaration filed only in response to the school's Motion

---

[3] *Nuxoll* applied the *Tinker* standard to factual circumstances materially identical to this case. But the judge declined to follow it, finding the case distinguishable because the school's action in banning the student's "Be Happy, Not Gay" T-shirt was not viewpoint neutral. That's true, *see Nuxoll*, 523 F.3d at 670, but it's not a reason to cast aside *Tinker* in favor of *Kuhlmeier*. To repeat: *Kuhlmeier's* regulation-permissive test applies when the speech in question might reasonably be perceived "as bear[ing] the imprimatur of the school." *Mahanoy*, 141 S. Ct. at 2045 (alteration in original) (quotation marks omitted). A.L.'s T-shirt doesn't qualify. *N.J.*, 37 F. 4th at 426.

for summary judgment. Nevertheless, the Court assumed "that...C.S. has submitted evidence sufficient to show that she intended to wear the hat to convey a protected message about her opinions on the Second Amendment, the Court concludes that C.S. has failed to raise a genuine issue of material fact...Rather, the undisputed facts in the record support entry of summary judgment in favor of the school officials." *See* RE 25, Page ID# 615-616.

In that regard, the Plaintiff was asked an open-ended question at her deposition, "Why did you pick the hat?" The Plaintiff was free to give any response that she wished and stated "Because it made me feel safe." *See* RE 17-10, Page ID# 424.

Likewise, the Plaintiff was asked several questions about her hobbies and what she likes to do for fun. Surprisingly, and in spite of the third (3rd) grader's alleged staunch support for shooting and going to Second Amendment rallies, these activities were not mentioned. Certainly, one does not need to exercise their constitutional rights to speak in support of them. However, this questioning was designed to discover whether the Plaintiff engaged in activities that might glean support for the Second Amendment and whether she actually enjoyed them. This would have prompted further questioning on the topic but, again, nothing was mentioned. In reality, it is not uncommon for parents to drag their kids to events that they otherwise do not enjoy. Of all the activities that the Plaintiff could have stated,

her candid deposition testimony did not include anything remotely related to the Second Amendment.

In evaluating whether the Plaintiff's declaration should be considered, the Plaintiff is the non-movant for the purposes of the school official's Motion. She was asked a direct question on a material issue during her deposition for which she gave her response. Given the Plaintiff's age, she was asked a follow up question "was it because it's your dad's hat?" to which she said "Yeah; yes." On this issue, the Sixth Circuit has reasoned:

> Our precedents suggest "a relatively narrow definition of contradiction." If a party "was not directly questioned about an issue," a later affidavit on that issue simply "fills a gap left open by the moving party." After all, deponents have no obligation to volunteer information the questioner fails to seek. *Id.*; *see Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (holding that a party has no obligation to volunteer the content of a conversation when deponent "was not expressly asked" what another said to him). **But a deponent may not "duck her deposition" or "hold her cards in anticipation of a later advantage."** *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013). Where a deponent is "asked specific questions about, yet denies knowledge of, **the material aspects of her case**, the material allegations in her affidavit directly contradict her deposition." *Id.*; *see Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984) (citation omitted) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

*Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 977 (6th Cir. 2019)(emphasis added)(citations omitted).

Here, the contradiction does not involve a prior denial, but the Plaintiff's intent and reasoning underlying the purported speech. There is no dispute that "feeling safe" and "love for her father" presents an unrelated and different rationale than support for gun rights. That is not to say that both reasons could not exist together, but the Plaintiff did not give both reasons at her deposition. In addition to the foregoing, the Plaintiff's mother testified that she selected the hat because she bought it for her dad's birthday. *See* RE 17-5, Page ID# 385. Although the Plaintiff's mother was deposed two (2) months after the Plaintiff, no attempt was made to clarify the Plaintiff's testimony at that time. More interestingly, the Plaintiff did not make any attempt to include this declaration in support of her own Motion for summary judgment. As such, the Plaintiff's declaration, if the same was considered by the District Court, is a contradiction of her earlier testimony and should be stricken from consideration.[4]

## IV. Qualified Immunity Properly Protected School Officials from Liability

The District Court was correct in granting qualified immunity to Defendants. The doctrine of qualified immunity shields public officials from liability unless they violate a clearly established constitutional right that a reasonable person would have

---

[4] To be clear, the Defendants and their counsel do not accuse or imply that the minor Plaintiff has done anything wrong, and by now, it should be evident that the Plaintiff's Next Friend is attempting to commandeer his daughter's rights in advance of his own interests. However, this is her claim—not his.

known about (*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  In this case, no clearly established law indicates that elementary school students have a right to wear clothing depicting firearms as a form of symbolic speech.

The legal landscape surrounding student speech and clothing depicting firearms is not well-settled, particularly at the elementary school level.  Moreover, Courts have generally deferred to school officials in determining what constitutes potentially disruptive or harmful speech, especially when student safety and emotional well-being are at stake. *See e.g. Curry*, 513 F.3d at 577.

In this context, Defendants could not have reasonably known that their actions violated any constitutional right.  The decision to ask C.S. to remove her hat was based on well-founded concerns about disruption and student safety, and no prior case law clearly established that restricting firearm imagery in this context was unconstitutional.

## V.    The District Court Has Inherent Authority to Manage its Docket

As noted in the Local Rules for the Eastern District of Michigan:

**COMMENT:** Federal Rule of Civil Procedure 6(b)(1)(A) permits a person to seek an enlargement of time "with or without motion or notice . . . if a request is made before the original time or its extension expires. . . ." Although the Court generally prefers that such relief be sought by stipulation or motion, if a person chooses to seek relief by means of a "request," LR 7.1(a) still applies. The court retains the inherent authority to alter the briefing schedule. 12/1/2022

Rule 6(a) states, in relevant part:

> In computing any period of time prescribed or allowed by these rules,
> by the local rules of any district court, by order of court, or by any
> applicable statute, the day of the act, event, or default from which the
> designated period of time begins to run shall not be included. The last
> day of the period so computed shall be included, unless it is a Saturday,
> a Sunday, or a legal holiday, or, when the act to be done is the filing of
> a paper in court, a day on which weather or other conditions have made
> the office of the clerk of the district court inaccessible, in which event
> the period runs until the end of the next day which is not one of the
> aforementioned days.

*Violette v. P.A. Days, Inc.,* 427 F.3d 1015, 1017 (6th Cir. 2005)

Rule 6(a)(3) states, in relevant part:

> Unless the court orders otherwise, if the clerk's office is inaccessible
> on the last day for filing under Rule (6)(a)(1), then the time for filing is
> extended to the first accessible day that is not a Saturday, Sunday or
> legal holiday; or during the last hour for filing under Rule 6(a)(2), then
> the time for filing is extended to the same time on the first accessible
> day this is not a Saturday, Sunday or legal holiday.

Fed.R.Civ.P 6(a)(3)

It is acknowledged by the undersigned that the Sixth Circuit Court of Appeals

has interpreted Rule 6 to exclude circumstances where a specific calendar date for

filing papers has been ordered by the Court.[5] *See Violette*, 427 F. 3d at 1018.

However, it is noteworthy that the Court in *Violette* considered the application of

---

[5] As candor to the Court, the undersigned was not aware of the Sixth Circuit's
decision in *Violette v. P.A. Days, Inc.,* 427 F.3d 1015, 1017 (6th Cir. 2005) when the
Defendants' Motion was filed on April 24, 2023. Nevertheless, the undersigned is
presumed to have such knowledge.

Rule 6 relative to the time for filing class settlement opt-out forms rather than dispositive motions. This distinction is also present in the decision of *Fleischhauer v. Fletner,* 3 F.3d 148 (6th Cir. 1993) upon which the Sixth Circuit in *Violette* had relied in part with its ruling. [6]

In holding that the District Court had mis-applied Rule 6(a) to date-certain deadlines, the Sixth Circuit in *Violette* remanded the case with instruction to the District Court to address, among other things, the consideration of possible equitable remedies. [7] While the Court did not have jurisdiction to rule on the issue of the possible equitable remedies in the case, the Sixth Circuit acknowledged the District Court's discretion in considering that issue on remand.

In the present case, the undersigned does not present any other reason for the filing of Defendants' Motion for Summary Judgment on April 24, 2023 rather than April 21st or 22nd other than a misinterpretation and mis-application of Rule 6. While there are other contributing circumstances which factored into the undersigned's

---

[6] The Matter before the Court in *Fleischhauer* concerned an application for the supplemental filing of attorney fees rather than the filing of a dispositive motion.

[7] Seemingly, the District Court's consideration of equitable remedies stems from the Supreme Court wherein the Court stated: in an analogous context that filing deadlines are inherently arbitrary but, despite the potential harshness of their application, they must be enforced in the absence of equitable remedies. *United States v. Locke,* 471 U.S. at 94–95, 105 S.Ct. 1785. *Id.* at 1019.

decision to file on April 24, 2023, none would be of consequence to the Court in consideration of this issue.

As candor to the Court, the undersigned believed that Rule 6 applied, even in circumstances where a specific calendar date had been set by the Court. Comparing same to the Court's Case Management Order which provides that "Courtesy copies of motions and briefs must be provided to chambers and in accordance with Local Rule 5.1.1(c)..." ECF No. 12, Page ID, the undersigned interpreted Rule 6 to mean that the "last day" was extended to April 24, 2023. Since Rule 6 (a)(3) further provided that inaccessibility of the Clerk's office on the "last day", the undersigned interpreted same to mean that the Motion could be filed on April 24, 2023, and remain timely under the Court's Case Management Order. It was not the undersigned's intention to violate the Court's Case Management Order nor did the undersigned have any dilatory motive in filing the Defendants' Motion.

The Plaintiff does not cite any authority indicating that the District Court abused its discretion. Likewise, the Plaintiff does not cite any prejudice in responding to Defendant's Motion for summary judgment. Nevertheless, the Plaintiff's Brief on Appeal was filed, but in need of corrections which were allowed by this Honorable Court. The Appellees simply ask for the same courtesy to be upheld.

## CONCLUSION

WHEREFORE, Defendants-Appellant, Craig McCrumb, Amy Leffel, and Michael Papanek, respectfully request that this Honorable Court Affirm the District Court's GRANT of summary judgment in their favor, together with any other relief that may fair, just and in good conscience.

Respectfully submitted,

/s/ DANIEL J. LoBELLO
DANIEL J. LoBELLO (P81069)
Attorney for Defendants-Appellants
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
989-790-0960/dlobello@owdpc.com

Dated: October 16, 2024

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of the foregoing DEFENDANTS' -APPELLEE'S

BRIEF ON APPEAL electronically via this Court's ECF system and via U.S. Mail

on October 16, 2024 upon:

John R. Monroe
jrm@johnmonroelaw.com

Michael F. Smith
smith@smithpllc.com

Eugene Volokh
volokh@stanford.edu

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ DANIEL J. LoBELLO
DANIEL J. LoBELLO (P81069)
Attorney for Defendants-Appellants
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
989-790-0960
dlobello@owdpc.com

</div>

Dated:        October 16, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6205 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word ver. 2409 in Times New Roman 14-point font.

Respectfully submitted,

/s/ DANIEL J. LoBELLO
DANIEL J. LoBELLO (P81069)
Attorney for Defendants-Appellants
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989-790-0960
dlobello@owdpc.com

Dated:        October 16, 2024

## **Addendum – Designation of District Court Documents**

Consistent with 6 Cir. R. 28(a)(1), Defendants/Appellees designate the following relevant documents from the District Court's electronic record:

| **Re#** | **Description** | **Page ID Numbers** |
| --- | --- | --- |
| 17 | Defendant's Motion for Summary Judgment | 279-318 |
| 17-2 | Photo of Hat | 320 |
| 17-3 | Deposition of Adam Stroub | 321-337 |
| 17-4 | Deposition of Amy Leffel | 338-350 |
| 17-5 | Student Handbook 2021-2022 | 351-337 |
| 17-6 | Deposition of Jessica Linfield | 378-392 |
| 17-7 | Summons and Complaint | 393-403 |
| 17-8 | Answer | 404-417 |
| 17-9 | RK Locomotion Newsletter | 418-421 |
| 17-10 | Deposition of C.S. | 422-427 |
| 17-11 | Deposition of Michael Papanek | 428-435 |
| 17-12 | Emails February 17, 2022 | 436 |
| 25 | Memorandum Opinion And Order Resolving Cross Motions For Summary Judgment | 1-35 |