No. 24-1364

The United States Court of Appeals
For the Sixth Circuit

C.S.,
Plaintiff-Appellant
v.
CRAIG MCCRUMB, et.al.
Defendants-Appellees

Appeal from the United States District Court
For the Eastern District of Michigan
The Hon. Terrence G. Berg, District Judge
Case No. 4:22-CV-10993-TGB-EAS

Reply Brief of Appellant

John R. Monroe
John Monroe Law, P.C.
156 Robert Jones Road
Dawsonville, GA 30534
(678) 362-7650
jrm@johnmonroelaw.com

Eugene Volokh
434 Galvez Mall
Stanford, CA 94305
(650) 721-5092
volokh@stanford.edu

Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Ave. N.W.
Suite 1025
Washington, DC 20006
202-454 2860
smith@smithpllc.com

Attorneys for Appellant

## <u>Disclosure Statement</u>

Appellant and her attorneys certify that they already filed a disclosure statement in conformity with 6 Cir. Rules 28 and 26.1 and they have no amendments to it.

# Table of Contents

**DISCLOSURE STATEMENT** ....................................................1

**TABLE OF CONTENTS** .........................................................2

**TABLE OF CITATIONS** .........................................................3

**REPLY SUMMARY OF THE ARGUMENT** ...............................5

**ARGUMENT**........................................................................5

*I.   C.S.'s First Amendment Rights Were Violated.*.................5

*II.   The School Officials Are Not Entitled to Qualified*

*Immunity*...........................................................................13

*III. Court Deadlines Should Be Enforced Equally*...............14

**CONCLUSION** ....................................................................15

**CERTIFICATE OF SERVICE**..............................................17

**CERTIFICATE OF COMPLIANCE** ......................................18

# <u>Table of Citations</u>
## <u>Cases</u>

*Chaplinsky v. N.H.*, 315 U.S. 568, 571-72 (1942) .............................. 10

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995) ............................................................. 11

*Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ......................... 15

*McElhaney v. Williams,* 81 F.4th 550, 557 (6th Cir. 2023) ............. 13

*Mumford v. Zieba,* 4 F.3d 429, 435 (6th Cir. 1993) .......................... 14

*N.J. v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022) ................. 7, 10

*Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 252 (4th Cir. 2003) ..7, 13

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25 (1st Cir. 2020 ....................................................................................... 8

*Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 673 (7th Cir. 2008 ....................................................................................... 7

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ................... 15

*Reich v. City of Elizabethtown, Kentucky,* 945 F.3d 968, 977 (6th Cir. 2019) ...................................................................................... 12

*Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ...................................... 10

*Texas v. Johnson*, 491 U.S. 397, 414 (1989) ...................................... 10

*Tinker v. Des Moines Independent Comm. School Dist.,* 393 U.S. 503

(1969)................................................................................................ passim

*United States v. Wright,* 343 F.2d 849, 867 (6th Cir. 2003)............ 13

*Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017 (6th Cir. 2005) .... 14

*Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 877 (7th

Cir. 2011 ................................................................................................ 10

## **Rules**

FRCP 6(a) ................................................................................................ 15

## Reply Summary of the Argument

The School Officials subtly but significantly miscast C.S.'s position, which emphatically does not seek protection for "a student's right to express themselves however, whenever, and about whatever they wish." School Officials' Brief at 7. C.S. is not advocating for a First Amendment free-for-all at elementary schools. What she does seek, though, is faithful application of *Tinker*[1] and its progeny. Under that clearly established, settled authority, the School Officials' speculative, after-the-fact hypothesizing about potential disruption was insufficient to justify their content-based command that C.S. remove a hat they did not like.

C.S. also seeks nothing more than fairhanded application of this Court's binding authority regarding the timeliness of motions—here, a motion that was aimed (successfully) at depriving her of her day in court.

## Argument

### I.    C.S.'s First Amendment Rights Were Violated.

The Parties' opening briefs frame a fundamentally irreconcilable view of both the factual record and current First Amendment jurisprudence.

---

[1] *Tinker v. Des Moines Independent Comm. School Dist.,* 393 U.S. 503 (1969).

As C.S.'s opening brief notes, under *Tinker* and its progeny, the School Officials needed to present facts "that might *reasonably* have led them to forecast substantial disruption of or material interference with school authorities or the invasion of the rights of others." C.S. Brief at 20-21 (emphasis added). The brief goes on to note that the School Officials instead cited the precise things *Tinker* holds insufficient to censor speech—generalized, speculative testimony about "fear." *Id.* at 21-22.

In response, the School Officials point to what the district court called "**undisputed** evidence supporting their professional judgment." School Brief at 9, quoting Memorandum Opinion, RE 25, Page ID # 623 (School Officials' emphasis). But on closer examination, that "professional judgment" of which there was "undisputed evidence" is mere gossamer—just School Officials' subjective, conjectural view that allowing C.S. to wear her hat would cause a "risk of scuffles." *Id.*

Allowing such unsupported *ipse dixit* to establish the "specific and significant fear of disruption" *Tinker* requires would write that case out of the books, and the First Amendment out of this Nation's schools. As the Fourth Circuit explained in a highly analogous situation, a student's T-shirt stating "NRA" and depicting people pointing rifles was protected

because "*Tinker* requires a specific and significant fear of disruption, not just some remote apprehension of disturbance." *Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 252 (4th Cir. 2003). "Undisputed" or not, the School Officials' vague, *post facto* assertion that they feared that C.S.'s wearing the hat would cause a "risk of scuffles" simply does not clear the bar *Tinker* sets. School Officials "must present facts that might reasonably have led school authorities to forecast *substantial disruption of* or *material interference with* school activities or the invasion of the rights of others." *N.J. v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022) (cleaned up, emphasis added) (citing *Tinker*, 393 U.S. at 514, and *Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 673 (7th Cir. 2008)).[2] Here they presented no such facts.

School Officials also cite approvingly the district court's faulting of C.S. for "present[ing] no evidence" to countermand their speculation about "scuffles." School Brief at 9-10. But "*Tinker* places the burden of justifying student-speech restrictions squarely on school officials." *N.J.*, 969 F.3d at 25 (citing *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969

---

[2] C.S.'s opening brief at p. 20 inadvertently attributed that quotation to *Newsom* rather than to *N.J.*, and contained only a partial cite to *Nuxoll*. Counsel regret the errors but correct them for the Court here.

F.3d 12, 25 (1st Cir. 2020) (collecting cases)). Not only does idle speculation about conjectural "scuffles" fail to meet that standard, it is unclear what evidence possibly exists, and that C.S. could have offered, to "call this judgment into question." Memorandum Opinion RE 25, Page ID #623.

The School Officials correctly note that "*Tinker* does not require schools to wait for actual disruption." School Brief at 11. But nothing they offered elevated Leffel's generalized, speculative concerns into evidence of a *substantial likelihood* of disruption. This is confirmed by the increasing levels of significance both the School Officials and the district court attribute to the Oxford High School shooting. Where the School Officials' lower-court papers mentioned that tragic school shooting in passing,[3] their appeal brief enshrines it as central to their analysis, "a well-known event that had a direct emotional impact on the school's student body." School Brief at 11. But that statement is unsupported by citation to any record evidence, and for good reason: the Oxford shooting happened at a high school, two counties away from Kerr Elementary, and while there was testimony that students from the Oxford *district* had

---

[3] School Officials' Brief in District Court, RE 17, Page ID 298, 305.

transferred to Durand, nothing supports the contention that Oxford *high school* students had transferred to Kerr *Elementary*. School Officials' description of "a specific, reasonable expectation [of disruption] *based on the known emotional state of certain students in the school*," *id.* at 15, is not accurate.

Nor do the School Officials confront C.S.'s assertion that the district court declined to view C.S.'s hat as "school sponsored speech." C.S. Brief at 23-24 (quoting Memorandum Opinion, pp. 28-29, RE 25, Page ID ## 623-624). Instead, they simply elide it and recast "Wear a Hat Day" as "part of the larger 'Great Kindness Challenge,' a school-sponsored activity aimed at promoting kindness, empathy, and non-violence among students." School Brief at 15. But the record is bereft of any School Official, or other school employee, telling C.S. or her parents at the time they forced removal of her hat containing C.S.'s speech that they were doing so because it undercut the "Great Kindness Challenge." Papanek Depo., RE 17-11, Page ID 430; Leffel Depo., RE 17-4, Page ID 340.

This Court should be under no illusion. The School Officials are asking it to recognize an "emotional harm" exception to the First Amendment, School Brief at 13-17—something the Supreme Court never

has countenanced. To be sure, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. N.H.*, 315 U.S. 568, 571-72 (1942) (footnote omitted). "These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572 (footnote omitted). But "there's no generalized 'hurt feelings' defense to a high school's violation of the First Amendment rights of its students." *N.J.*, 37 F.4th at 426 (citing *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 877 (7th Cir. 2011), and applying *Tinker*).

Even speech *designed* to be upsetting or arouse contempt—which C.S.'s speech on her hat certainly was not—is protected, for "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011), citing *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "Indeed, 'the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, *or even*

*hurtful.*" *Id.* (emphasis added) (citing *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995)). Neither the School Officials' generalized dislike of firearms nor their vague, unsupported speculation about "emotional harm to students, particularly those affected by the Oxford shooting," School Brief at 15, are sufficient to deprive C.S.'s speech of First Amendment protection.

The School Officials continue to emphasize that C.S. testified that she chose to express the speech at issue "Because it made me feel safe." School Brief, p. 18. The School Officials failed to ask C.S. about the speech itself, and did not explore how the speech related to her political views. They now assert they intentionally asked C.S. open-ended questions about her hobbies "designed to discover whether the Plaintiff engaged in activities that might glean support for the Second Amendment and whether she actually enjoyed them." *Id.*

The School Officials fail to explain why they thought asking C.S. about her hobbies would elicit responses about her political views. And they use the inadequacy of their own deposition questions to imply that third-grader C.S. was cleverly "duck[ing] her deposition" or "hold[ing] her cards in anticipation of a later advantage." School Brief, p. 19 (quoting

*Reich v. City of Elizabethtown, Kentucky,* 945 F.3d 968, 977 (6th Cir. 2019)).

In *Reich,* however, this Court criticized a deponent who was "asked specific questions about, yet denie[d] knowledge of, the material aspects of her case." *Reich* is inapposite to the present case. C.S. did not deny any knowledge of anything in response to a specific question or otherwise. She provided responses about her hobbies to questions about her hobbies. C.S. Depo., RE 17-10, Page ID ## 424-425. She was not asked about her political views or her support for the Second Amendment, so she did not provide any responses on those topics. The School Officials' expectation that a question on one topic would yield a response on a different topic was their own creation.

Lastly, for the first time on appeal, the School Officials argue that C.S.'s next friend "is attempting to commandeer his daughter's rights in advance of his own interests." School Brief at 20 n.4. But the School Officials conducted extensive discovery, including deposing C.S. and both her parents. The School Officials did not identify even the slightest evidence of commandeering, which is unsurprising given that they did not bother to ask any of the deponent about it. The Court should not give

consideration to this eleventh hour argument. *United States v. Wright,* 343 F.2d 849, 867 (6th Cir. 2003) ("We do not review arguments that are raised for the first time on appeal").

## II.   The School Officials Are Not Entitled to Qualified Immunity.

The School Officials' three-paragraph discussion of qualified immunity, School Brief at 20-21, does nothing to undercut C.S.'s contention that *Tinker* and its progeny clearly establish the right to wear clothing conveying an ideological viewpoint in school—even elementary school—absent a reasonable forecast of substantial disruption. C.S. Brief at 35-36. *Newsom* and other cases have made clear that that includes pictures of guns and other weapons. *Id.* at 36. And since *Tinker* it has been clear there is no "hurt feelings" exception to the First Amendment, including for speech at K-12 schools.

For qualified immunity purposes, though clearly established law "should not be defined at a high level of generality," *McElhaney v. Williams,* 81 F.4th 550, 557 (6th Cir. 2023) (cleaned up), an earlier decision does not have to be "directly on point." *Id.* (cleaned up). In this case, *Tinker* and its progeny clearly establish that pure speech is subject to a "reasonable forecast of substantial disruption" test. The School

Officials should have known that the contours of C.S.'s right were well outside the School Officials' actions. Qualified immunity is unwarranted.

Of course, even if this Court finds that the School Officials are entitled to qualified immunity, such a finding only affects C.S.'s request for nominal damages. Qualified immunity has no effect on declaratory or injunctive relief. *Mumford v. Zieba,* 4 F.3d 429, 435 (6th Cir. 1993).

### III.   Court Deadlines Should Be Enforced Equally.

C.S.'s third issue is not about a court's inherent authority to manage its docket. Nor is it about the School Officials' unawareness of the binding day-counting rule of *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017 (6th Cir. 2005), nor even counsel's admirable candor in confessing it. School Brief at 21-24. Rather it is about fair play and equal treatment.

Rule 56 establishes a mechanism for a party to try to resolve a case without factual disagreement between the parties via motion for summary judgment. The district court gave both Parties here a deadline for invoking that Rule. C.S., a third-grader seeking vindication of her First Amendment rights, met that deadline. The School Officials did not. Yet while they argue at length that a child should be held to adult standards regarding answers to deposition questions and follow-up

affidavits, School Brief at 17-20, the School Officials invoke judicial leniency to allow them to deprive that same child of her day in court, despite their disregard of FRCP 6(a).

While a court certainly has broad discretion to control its docket, it should not enforce deadlines differently against different types of parties. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (refusing to recognize a more lenient standard for pro se litigants who miss a deadline than that afforded represented ones) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The district court reversibly erred in denying C.S.'s motion to strike and accepting and granting the School Officials' untimely dispositive motion.

## **CONCLUSION**

For the above reasons and those in her September 16, 2024 brief, C.S. respectfully requests that this Court reverse the District Court and remand to that court with instructions to grant summary judgment in favor of C.S.

Respectfully submitted,

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
156 Robert Jones Road
Dawsonville, GA 30534
Telephone: (678) 362-7650
jrm@johnmonroelaw.com

/s/ Michael F. Smith
Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Ave. N.W.
Suite 1025
Washington, D.C. 20006
(202) 454-2860
smith@smithpllc.com

and

/s/ Eugene Volokh
Eugene Volokh
434 Galvez Mall
Stanford, CA 94305
(650) 721-5092
volokh@stanford.edu

ATTORNEYS FOR APPELLANT

Dated: November 6, 2024

## Certificate of Service

I certify that I served a copy of the foregoing Reply Brief of Appellant electronically via this Court's ECF system and via U.S. Mail on November 6, 2024, upon:

Gregory W. Mair
gregmair@owdpc.com

Daniel J. Lobello
dlobello@owdpc.com

O'Neill, Wallace & Doyle, P.C.
300 St. Andrews Road Suite 302
Saginaw, MI  48638

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
Attorneys for Appellant
156 Robert Jones Road
Dawsonville, GA 30534
(678) 362-7650
jrm@johnmonroelaw.com

# Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,528  words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Word ver. 2105 in Century Schoolbook 14-point font.

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
Attorneys for Appellant
156 Robert Jones Road
Dawsonville, GA 30534
(678) 362-7650
jrm@johnmonroelaw.com