IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

C.S. by her Next Friend, ADAM STROUB, )
) Case No. 24-1364
Plaintiff/Appellant, )
v ) Case No.: 4:22-cv-10993-TGB-EAS
) Hon. Terrence G. Berg
CRAIG MCCRUMB, Individually and in his official capacity as Superintendent of Durand Area Schools and AMY LEFFEL, Individually and in her official capacity as Principal of Robert Kerr Elementary School And MICHAEL PAPANEK Individually and in his official capacity as On Track Coach of Robert Kerr Elementary School, )

Defendants/Appellants. )

JOHN ROBERT MONROE
Attorney for Plaintiff/Appellant
156 Robert Jones Road
Dawsonville, GA 30534
678-362-7650

EUGENE VOLOKH
Co-counsel for Plaintiff/Appellant
434 Galvez Mall
Stanford, CA 94305
650-721-5092

MICHAEL F. SMITH (P49472)
Co-counsel for Plaintiff/Appellant
24405 Gratiot Avenue
Eastpointe, MI 48021
(202) 454-2860

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
Attorneys for Defendants/Appellees
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638
(989) 790-0960

**DEFENDANTS/APPELLEES' RESPONSE TO PLAINTIFF/APPELLANT'S PETITION FOR REHEARING EN BANC**

PREPARED BY:
DANIEL J. LoBELLO (P81069)
Attorney for Defendants/Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989-790-0960/dlobello@owdpc.com

# TABLE OF CONTENTS

**Page**

Index of Authorities ........................................................iv

Rule 40(B)(2) Statement ........................................................1

Statement of Facts ........................................................2

Great Kindness Challenge: Wear-a-Hat Day ........................................3

Procedural History ........................................................6

Summary of Argument ........................................................7

Argument ........................................................7
- I. The Panel's Opinion Properly Interpreted Tinker and its Progeny ........7
- II. The Court of Appeals and District Court Ruling Does Not Conflict with other Circuits or Creates a New Category of Restriction on Student Speech ........................................................10
- III. The Court's Decision does not Create a New Restriction on Student Speech ........................................................11

Conclusion ........................................................12

Certificate of Service ........................................................13

Certificate Of Compliance ........................................................14

# INDEX OF AUTHORITIES

**Cases** **Pages**

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) ........................7

*Hardwick ex. rel. v. Heyward,*711 F.3d. 426,439 (4th Cir. 2013) ....................10

*Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260 108 S. Ct. 56 (1988) ............9

*L.M. v. Town of Middleborough*, 103 F. 4th 854, (1st Cir. 2024) .....................11

*Lowery v. Euverard*, 497 F.3d 584, 591-93 (6th Cir. 2007) ...........................8

*Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 187 (2021) .........................9

*Newsom v. Albemarle Cty. Sch. Bd.,* 354 F.3d 249 (4th Cir. 2003) ..................10

*Schoenecker v. Koopman,* 349 F. Supp. 3d. (W.D. Wis. 2018) ........................8

*N.J. v. Sonnebend,* 37 F.4th 412 (7th Cir. 2022) ....................................10

*Tinker v. Des Moines Independent Community School Dist,* 393 U.S. 503 (1969) ....................................1, 2, 7, 8, 9, 10, 11, 12

*Zamecnik v. Indian Prairie Sch. Dist. #204,* 636 F.3d 874, 877 (7th Cir. 2011) ..........................................11

**Court Rules**

42 U.S.C. § 1983 ..............................................................6

## RULE 40(B)(2) STATEMENT

On February 17, 2022,[1] third grader and Plaintiff, C.S. wore a provocative hat to school as part of a "dress-up day" during the "Great Kindness Challenge" a week-long, school-sponsored event. "The Hat" in question is black, baseball-style cap with white lettering/picturing that contains a white star, a picture of an M16 or ArmaLite Rifle ("AR") and the words "COME AND TAKE IT" below the rifle. *See ECF No. 17-2, Page ID #320*. After being asked to remove the Hat, in the absence of any discipline, and without any complaint to the School Board, C.S.'s father filed this lawsuit alleging violations of C.S.'s First Amendment Rights.

Following discovery, the parties filed cross motions for Summary Judgment. The Defendants' Motion for Summary Judgment was granted and the District Court held that the School's prohibition of Plaintiff's Hat did not violate the First Amendment. On Appeal, this Honorable Court affirmed the decision upholding the tenets of *Tinker* and finding, again, that the school officials' restriction of student speech did not violate Plaintiff C.S.'s First Amendment rights. *See e.g. Tinker*, 393 U.S. at 514

Plaintiff's Petition seeks further review of this Honorable Court's well-reasoned decision arguing that the Court did not correctly apply *Tinker* to this case,

---

[1] Less than three (3) months after the Oxford School Shooting. Oxford Schools are less than a one (1) hour drive from Robert Kerr Elementary.

that it conflicts with other Circuits application of *Tinker*, and it creates a new restriction on student speech. To the contrary, this Honorable Court correctly applied the holdings of *Tinke*r and its progeny—the Plaintiff simply disagrees with the Court's decision. In addition, the Plaintiff does not develop any cogent argument to show that the Court's application in this case was inconsistent with other Circuits. Finally, the Plaintiff's concerns that the decision in this case a new restriction on student speech are unfounded.

Unquestionably, *Tinker* allows school officials to consider the age and maturity of students, as well as environmental factors affecting the school population in forecasting a substantial disruption. In reaching its decision, this Honorable Court drew from decisions of other Circuit's applying *Tinker* to similar student speech cases. Although the Plaintiff disagrees, this Court's decision does not erode, but reinforces the lessons from *Tinker* without creating any new restrictions on student speech. For these reasons, and those described further below, the Plaintiff's Petition should be denied.

## STATEMENT OF FACTS

C.S. was a third (3rd) grade student at Robert Kerr Elementary School at the time of this incident. Before the start of each school year, the school administrators at Robert Kerr Elementary review the School's Handbook for each building. *See RE 17-4, Page ID # 342***.** Within the handbook for 2021/2022, the School implemented

a dress code stating that student clothing "must not be offensive in any way and the building principal/staff has the right to decide what is offensive, but some examples are: words/slogans that advertise illegal substances, words/slogans that are racially or religiously offensive, violence themes, vulgar or sexual innuendo, etc." *See ECF No. 17-4, Page ID# 342* and *ECF No. 17-5, Page ID# 364.*

Before and after the incident, C.S.'s parents, Adam Stroub and Jessica Linfield, never attended any Robert Kerr school board meetings to challenge the dress code policy in place in 2021/ 2022. *See ECF No. 17-4, Page ID# 341.* Mr. Stroub has never read the handbook or the dress code policy, but Ms. Linfield states that she had reviewed it. *See ECF No. 17-3, Page ID# 324* and *ECF No. 17-6, Page ID# 386.*

**Great Kindness Challenge: Wear-a-Hat Day**

On February 17, 2022, the School offered a "Dress Up-Day" allowing students to "Wear a (school appropriate) Hat" as part of the school's Great Kindness Challenge. *See ECF No. 17-9, Page ID# 419.* The Great Kindness Challenge included school sponsored activities encouraging students to dress-up and complete a Great Kindness check list. *Id.* Normally, students are only allowed to wear hats during recess time and Hat Day was a special occasion. *See ECF No. 17-5, Page ID# 364.*

In selecting her particular hat, C.S.'s mother testified that C.S. picked the Hat from a pile of hats at their home. *See ECF No. 17-6, Page ID#385.* She believed it was because C.S. had given the Hat to her father, Adam Stroub, as a birthday present. *Id.* Similarly, C.S. said that she picked the Hat because it made her feel safe, and because it was her dad's hat. *See ECF No. 17-10, Page ID# 424.* Although her later declaration says differently.

When she arrived at school, Mr. Papanek saw C.S. and Her hat with a gun on it.[2] *See ECF No. 17-11, Page ID# 431.* Mr. Papanek went to Principal Amy Leffel's office to inform her about the Hat, and discussed what, if anything, should be done. *Id.* Ms. Leffel believed that the depiction of a weapon with the phrase, "COME AND TAKE IT" was provocative, threatening and may incite an altercation or disruption to the educational environment. *See ECF No. 17-4, Page ID#342.* She also believed that the depictions on the Hat were against the School dress code which prohibited the display of violent themes. *Id.*

Ms. Leffel also believed that the Hat might cause fear and disruption among the students and their rights to a free and appropriate public education. *See ECF No. 17-5, Page ID# 373.* In the background of this incident, Durand Area Schools had absorbed several students from Oxford Area School District who moved to the area

---

[2] Mr. Papanek is the On Track Coach at Robert Kerr Elementary, and C.S. would often stop by his office in the morning with other students to say "hi." *See Exhibit 10, pg. 5,6.*

following the school shooting that occurred three months prior to this incident. *See ECF No 17-4, Page ID# 344.* These students were receiving counseling, social work, and other support through the school. *Id.* With this in mind, Ms. Leffel and Mr. Papanek decided to have Mr. Papanek call home and see if another hat could be brought by C.S.'s parents. *See ECF No. 17-4, Page ID# 340.*

When Mr. Papanek reached C.S.'s parents, he explained that the Hat was inappropriate for school and asked if he could bring another hat. *See ECF No. 17-11, Page ID# 431.* Mr. Stroub declined and said, "no one better lay a hand on her hat." *Id.* Mr. Papanek and Ms. Leffel went to C.S.'s classroom, asked her to put the Hat in her locker, and left a voicemail with Mr. Stroub to discuss the matter. *See ECF No. 17-4, Page ID# 341.*

After C.S. returned home, Mr. Stroub emailed Ms. Leffel about the matter and Ms. Leffel responded by stating that the Hat depicted a weapon which was inappropriate for students to wear in a school setting and ran afoul of the student handbook. *See ECF No. 17-12, Page ID# 436.* Thereafter, Mr. Stroub and/or Ms. Linfield did not communicate further with the school regarding the incident. *See ECF No. 17-4, Page ID# 343.* Likewise, C.S.'s parents did not attend any board meetings to challenge the dress code. *Id.* More importantly, C.S. did not receive any discipline because of the incident. *Id.*

## PROCEDURAL HISTORY

Plaintiff by her father/next friend filed her Complaint on May 9, 2022, against the school officials under 42 U.S.C. § 1983, alleging violations of the First Amendment and the Fourth Amendment.

At her deposition, Plaintiff testified that she only wore the hat because the hat made her feel safe and because she loved her father. *See ECF No. 17-10, Page ID# 424.* Thereafter, Defendants and the Plaintiff filed cross-motions for Summary Judgment. Defendants argued that Plaintiff's Hat was not "pure speech," and, even if it was, the school has the right to impose reasonable restrictions on student speech. Finally, Defendants argued that they were entitled to Qualified Immunity. *See ECF No. 17, Page ID#279.* In rebuttal, the Plaintiff's counsel submitted a declaration of Plaintiff stating that she wore that Hat to show her support of people's right to have guns.

The Plaintiff appealed, and on May 2, 2025, the Court of Appeals affirmed the District Court's decision holding that the School's restriction of student speech was reasonable in light of the "special characteristics' and circumstances, such as [the School's] absorption of students from the Oxford School District and the young age and maturity of Plaintiff and her classmates, combined with the Hat's provocative message. In so reasoning, this Court held that school officials could reasonably forecast a substantial disruption to the school's educational environment,

*Tinker*, 393 U.S. at 514, and they did not violate Plaintiff C.S.'s First Amendment rights by asking her to remove her Hat.

## SUMMARY OF ARGUMENT

This Honorable Court's application of *Tinker* and its progeny was neither incorrect nor does it conflict with other Circuits. Even taking the facts in a light most favorable to Plaintiff, this Court properly ruled that the school officials' restriction on student speech was reasonable based on the forecasted disruption that C.S.'s hat would cause. The Plaintiff presented no evidence that the School's specific concerns were unfounded.

## ARGUMENT

### I. The Panel's Opinion Properly Interpreted *Tinker* and its Progeny.

It is well settled that students maintain their rights to free speech or expression in school, but those rights are not absolute. *See Tinker,* 393 U.S. at 506; *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) (noting that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings"). As this Court's Opinion acknowledges, student speech must be balanced against the need for school officials 'to maintain discipline and the integrity of the learning environment. RE 46-2, Page ID# 7. The restraint of student speech is justified when school officials forecast substantial disruption of or material

interference with school activities." *Tinker*, 393 U.S. at 514; *see also Lowery v. Euverard*, 497 F.3d 584, 591-93 (6th Cir. 2007). C.S. does not dispute this.

On February 17, 2022, Robert Kerr Elementary C.S. wore a " Hat" depicting an automatic weapon and inviting her Third (3rd) Grade classmates to "COME AND TAKE IT." Likely unknown to C.S. before this lawsuit, some of her classmates were seeking refuge from trauma caused by Oxford. *RE 17-4, Page ID# 344.*

C.S.'s father's Petition argues that the effect of Oxford on the restriction of speech in this case was, somehow, a surprise. *RE 50, Page ID#21.* However, after the incident, he never spoke with Principal Leffel, or anyone else at the school to understand any other justifications, aside from the dress code, that prompted the school's decision. Much like C.S.'s father argues in support of C.S.'s late declaration, the dress code wasn't the "sole" reason, and he never "asked." RE 28, Page ID#16-17.

Nonetheless, C.S.'s father challenges Leffel's rationale for restricting student speech, but provides no evidence in rebuttal of a forecasted disruption. *See RE 25, Page ID# 628.* As this Court found, the School's concerns were well-grounded and distinguishable from those in *Schoenecker. RE 46-2, Page ID#11.* The provocative slogan "Come and Take It" did not have the "bantering" effect like the phrases contained on the student's shirt in *Schoenecker*. *RE 46-2, Page ID# 11.*

Although C.S.'s father chooses to ignore it, *Tinker* gives deference to school officials decisions "in light of the special characteristics of the school environment," which may include such factors as the age and emotional maturity level of schoolchildren viewing the speech, particularly with respect to sensitive topics. *See* 393 U.S. at 506; *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 187 (2021).

In this case, School administrators relied on their professional experience in assessing the risks posed by the slogan and imagery on the Hat, especially given the maturity level of elementary students. Robert Kerr Elementary is a school for students in the second to the fifth grades, which is much younger than the students in *Tinker*..

This Court correctly reasoned that the speech of elementary students on sensitive matters must be made in light of "the emotional maturity of the intended audience." *Id. at* 1065-66 (quoting *Kuhlmeier*, 484 U.S. at 272). Additionally, this Court held that Robert Kerr Elementary students were "less mature and capable of [reining] in emotional outbursts than junior high or high schoolers" and "the provocative nature of the Hat's phrase "Come And Take It" could be perceived by the students "as a dare to try and take the hat off of [C.S.]." *Id.* at 166. *See* R. 17-4, Page ID #344. Accordingly, the School presented undisputed evidence that specific concerns surrounding C.S.'s hat were forecasted to cause disruption at Robert Kerr, and the restriction in this case was reasonable.

## II. The Court of Appeals and District Court Ruling Does Not Conflict with other Circuits or Creates a New Category of Restriction on Student Speech.

Plaintiff provides only the decisions of two other Circuits (*Sonnebend,* 37 F.4th 412 (7th Cir. 2022) and *Newsom*, 354 F.3d 249 (4th Cir. 2003)) in support of the alleged conflict created by the Court's application of *Tinker* in this case. However, this Court has already distinguished the facts of *Sonnebend* and *Newsom* from this case noting that *Sonnebend* recognized that speech must be considered in light of the age and grade level of students as well as the educational environment. RE 46-2, Page ID# 12-13. *Newsom* concerned students older than C.S., and the speech in question was much less provocative than the Hat in this case. Newsom, 354 F. 3d at 252. In addition, the Fourth Circuit found that the School failed to provide any evidence that Newsom's shirt was cause a disruption unlike the particularized fears in this case. *Id.* at 260. Still, this Court's application aligns with the Fourth Circuit in *Hardwick ex. rel. v. Heyward.* 711 F.3d. 426,439 (4th Cir. 2013).

In upholding the School's restriction of speech, the *Heyward* Court found that the school presented particularized concerns regarding a student's confederate flag shirt and anticipated that the shirt would disrupt the learning environment. 711 F.3d at 440. Accordingly, where the school has come forth with evidence demonstrating that the student speech was forecasted to cause a disruption, this Court's application of *Tinker* is consistent with other Circuits.

Again, the School officials here forecasted a substantial disruption due to the temporal and spatial proximity to the recent Oxford school shooting along with the maturity of elementary aged students in light of the provocative slogan on the Hat. Several students from Oxford had transferred to Robert Kerr Elementary and were receiving trauma-related support services. Consequently, the fear was not generalized but distinctive, and the school officials reasonably anticipated that a hat bearing a depiction of an AR-style firearm could distract students, incite disruption, and undermine the school's educational mission.

## III. The Court's Decision does not Create a New Restriction on student speech.

The Plaintiff argues that this Court has created a new restriction on student speech by its decision in this case. In so arguing, the Plaintiff says hurt feelings are are not enough to justify the School's actions in this case. *See L.M. v. Town of Middleborough*, 103 F. 4th 854, 875 (citing *Zamecnik v. Indian Prairie Sch. Dist. #204,* 636 F.3d 874, 877 (7th Cir. 2011)). The Plaintiff is correct. However, that position overly narrows the application of *Tinker* and the Court's decision in this case.

As this Court acknowledged, the focus is not how the students viewing C.S.'s Hat "feel", it is the lack of maturity and reduced ability to "rein in emotional outbursts" leading to a disruption in the learning environment. See RE 46-2, Page ID# 13. In addition, the dare to "Come and Take" the Hat is also a unique and greater

concern than with older students who typically have more self-control. As the Court recognized, these disruptions and outbursts are all compounded by a recent school shooting where the likelihood of students to act out and distract from theirs and their classmate's education was much more significant. RE 46-2, Page ID#14.

*Tinker* states that speech must be considered in light of the educational environment to determine whether the forecast of substantial disruption is justified. *See infra*. That is exactly the consideration made by this Court when it acknowledges that its decision might be different if C.S. were older, if Oxford never happened, or it happened in a different state, etc. *See RE 46-2, Page ID#15.* However, this was the undeniable reality at Robert Kerr Elementary in February of 2022, and where the student speech does not fall within the other restrictions, the case-by-case application of *Tinker* is not a "new" restriction on student speech.

## CONCLUSION

Defendants ask this Circuit to affirm its May 2, 2025, panel opinion and deny Plaintiff's request for rehearing *en banc*.

Respectfully submitted,

/s/ DANIEL J. LoBELLO
DANIEL J. LoBELLO (P81069)
Attorney for Defendants/Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989-790-0960/dlobello@owdpc.com

Dated: July 7, 2025

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing DEFENDANTS/APPELLEES' RESPONSE TO PLAINTIFF/APPELLANT'S PETITION FOR REHEARING EN BANC electronically via this Court's ECF system on July 7, 2025 upon:

John R. Monroe
jrm@johnmonroelaw.com

Michael F. Smith
smith@smithpllc.com

Eugene Volokh
volokh@stanford.edu

Respectfully submitted,

/s/DANIEL J. LoBELLO

DANIEL J. LoBELLO (P81069)
Attorney for Defendants/Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989-790-0960
dlobello@owdpc.com

Dated: July 7, 2025

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2793 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word ver. 2506 in Times New Roman 14-point font.

Respectfully submitted,

/s/DANIEL J. LoBELLO
DANIEL J. LoBELLO (P81069)
Attorney for Defendants/Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989-790-0960
dlobello@owdpc.com

Dated: July 7, 2025